UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
DON RIVERA, et ano.,

                      Plaintiffs,

       -against-                                                   09 Civ. 5879 (LAK)

METROPOLITAN TRANSIT AUTHORITY, et al.,

                      Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

        Appearances:

                Frederick K. Brewington
                LAW OFFICES OF FREDERICK K. BREWINGTON
                *Attorney for Plaintiffs Don Rivera*

                Kevin P. McCaffrey
                Catherine A. Rinaldi
                LONG ISLAND RAILROAD LAW DEPARTMENT
                *Attorneys for Defendants*

LEWIS A. KAPLAN, *District Judge.*

        This is an action under 42 U.S.C. § 1981 and 1983, among others, by two individuals against the Metropolitan Transportation Authority (erroneously named herein as Metropolitan Transit Authority) (the "MTA"), a number of MTA police officers, and others for, among other things, false arrest and excessive use of force. The gravamen of the complaint is that the plaintiffs, Hispanic males, were singled out for the alleged treatment by reason of their race or ethnicity. The MTA

Defendants[1] move for partial summary judgment dismissing certain of plaintiffs' claims:

- Under 42 U.S.C. § 1981 on the ground that there is no evidence that ethnicity or national origin was a motivating factor in any action by any defendant.

- Against defendants Ranoldo, King and Fitzpatrick on the grounds that they were not personally involved in any constitutional violation and, in any case, are entitled to qualified immunity.

- Against the MTA on the ground that there is not sufficient evidence to raise a genuine issue of material fact on plaintiffs' *Monell* theory.

The Court assumes familiarity with the pleadings and the evidence of record.

*Facts*

Given the issues raised by this motion, a full discussion of the facts, some of which are hotly contested, is unnecessary. It suffices here to say that plaintiffs claim that they were in Madison Square Garden ("MSG") attending a concert on June 25, 2008 and that Jason Rivera was punched by an unidentified person at the concert.[2] After attempting to file a report with MSG security, Jason, along with his brother, Don Rivera, then went to the MTA police department district station in Penn Station, where they informed the desk officer of the alleged assault and said that they wanted to file a police report.[3] They assert that the officer refused to accept a report and that the

---

[1] "MTA Defendants" refers collectively to the MTA and the MTA police personnel.

[2] Am. Compl. ¶ 20.

[3] *Id.* ¶¶ 26-29.

3

officer and others told them to get out, which they did.[4] One of the officers then followed them into Penn Station and engaged in a verbal exchange with them.[5] This allegedly led to a physical confrontation.[6] Plaintiffs claim that they were subsequently arrested and beaten.[7]

None of defendants Ranaldo, King, and Fitzpatrick – who are, respectively, a lieutenant, an inspector, and a captain in the MTA police department – saw or was involved in any of these events. Lieutenant Ranaldo, however, looked into the plaintiffs' allegations of misconduct by MTA officers and prepared two separate reports,[8] which concluded that the officers had not acted inappropriately.[9] Inspector King reviewed and endorsed Randaldo's report.[10] Captain Fitzpatrick was the designated duty captain at the time of the alleged incident, but did not witness any part of the incident(s) and did not review the custody injury report.[11]

I. The Section 1981 Claim

The parties agree that a plaintiff suing under Section 1981 cannot prevail unless the

---

[4] *Id.* ¶ 30.

[5] *Id.* ¶¶ 32-33.

[6] *Id.* ¶¶ 34-41.

[7] *Id.* ¶¶ 42-47.

[8] Ranaldo Dep. [DI 44-21], 19:8-20:21.

[9] McCaffrey Decl. Ex. H, at 4; Ex. I, at 29.

[10] King Dep. [DI 44-20], 50:3-10.

[11] Fitzpatrick Dep. [DI 44-8], 9:17-10:12.

4

plaintiff establishes that (1) the plaintiff is a member of a racial minority, (2) the defendant intended to discriminate on the basis of race, and (3) the discriminatory behavior is among the actions covered by the statute.

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[12] Where the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim.[13] In that event, the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment.[14]

Here, the MTA Defendants have pointed to what they contend is a lack of evidence sufficient to go to the trier of fact on the issue whether any of them intended to discriminate on the basis of race. The burden therefore falls on plaintiffs to point to admissible evidence sufficient to go to a jury on that point or suffer the dismissal of the Section 1981 claim.

Plaintiffs' memorandum makes only a few assertions in support of the notion that any of the defendants intended to discriminate on the basis of race:

- "Defendant Sullivan has numerous complaints against him for racial slurs . . . (Statement of Facts J *Supra* & Exh. EE)."

---

[12] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *White v. ABCO Eng'g Corp.*, 221 F.3d 293, 300 (2d Cir. 2000); see also FED. R. CIV. P. 56(c).

[13] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Virgin At. Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 273 (2d Cir. 2001).

[14] See, e.g., *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 269 F.3d 114, 123-24 (2d Cir. 2001); *Raskin v. Wyatt Co.*, 125 F.3d 55, 65-66 (2d Cir. 1997).

5

- "The vast majority of civilians who filed complaints against Defendant MTAPD Officers and alleged excessive force were non-Caucasian or had names that indicate that they are ethnically diverse. (Id.)"

- "Furthermore, there is currently a case pending in court that alleges Defendant MTA tolerates the use of racial slurs against passengers and employees. (*See* Exh. CC)."

- "Defendant MTAPD Officers knew Plaintiffs were Latino by sight and chose to harass Plaintiffs because they were Latino . . ."[15]

None of these assertions is supported by evidence admissible to prove the truth of plaintiffs' allegation that the defendants acted with intent to discriminate.

The first two of plaintiffs' assertions rely on their Exhibit EE, which consists of documents relating to civilian complaints and investigations thereof made with respect to three of the individual defendants. Even taking the complaints at face value, they (1) reveal no substantiated complaints – not "numerous complaints" – against Sullivan for the use of a racial or ethnic slur, and (2) do not indicate the race or names of the complainants. None is a sworn statement by a complainant testifying to anything that any of the subjects of the complaints did or said. Inasmuch as the documents contain MTA accounts of what complainants said, they presumably are admissible under Fed. R. Evid. 801(d)(2) and/or 803(6), at least against the MTA, for the fact that the complainants made the allegations reported. They are not, however, admissible for the truth of what the complainants said. Plaintiffs' Exhibit EE therefore is insufficient on either ground to raise a genuine issue of material fact with respect to the allegation that any of the individual defendants

---

[15] Pl. Mem. 33.

6

acted with discriminatory intent.

Plaintiffs' next reference is equally deficient, as the fact that there is a court case alleging that the MTA tolerates the use of racial slurs adds nothing. An unsworn statement by a non-party in a complaint in another lawsuit is hearsay when offered to prove the truth of that statement. It is not admissible.

Finally, plaintiffs have not taken the trouble to cite any evidence in support of their allegation that the individual defendants knew by sight that plaintiffs were Latino. Even assuming that were so, it would not be sufficient to get to the jury on discriminatory intent. The unstated premise of the argument is that anything unwelcome that befalls any person who is an identifiable member of a minority group probably occurs because the individual is a member of that group. While racism and all its manifestations are deplorable, the inference that it is present whenever something unwelcome happens to a member of an identifiable minority group is not rational. There is no evidence that anything that any defendant may have done was motivated, even in part, by an intention to discriminate on the basis of race.

Accordingly, defendants are entitled to dismissal of the Section 1981 claim.

II.     *Ranaldo, King and Fitzpatrick*

The essence of the claim against Lieutenant Ranaldo is that the investigation he conducted was inadequate. That against Inspector King is that he did not discuss the custody injury report or the incident with Ranaldo. Captain Fitzpatrick allegedly approved Ranaldo's determination that the officers acted lawfully without questioning it. These defendants seek summary judgment dismissing as to them on the alternative grounds that the facts, viewed in the light most favorable to the plaintiffs, do not raise a genuine issue of material fact as to the involvement of any of them in a

constitutional violation and, in any case, that they are entitled to qualified immunity.

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite" to a damages award under Section 1983.[16] Until recently, the Second Circuit rule was that a supervisory official was "personally involved" only when that official:

> "(1) participate[d] directly in the alleged constitutional violation; (2) fail[ed] to remedy the violation after being informed of the violation through a report or appeal; (3) create[d] or allow[ed] the continuation of a policy or custom under which unconstitutional practices occurred; (4) act[ed] with gross negligence in supervising subordinates who commit the wrongful acts; or (5) exhibit[ed] deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring."[17]

More recently, however, the Supreme Court in *Ashcroft v. Iqbal*[18] held that "[b]ecause vicarious liability is inapplicable to . . . [section] 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution,"[19] and it explicitly rejected the argument that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution."[20] Accordingly, "[a]bsent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."[21]

---

16 *Bellamy v. Mount Vernon Hosp.*, No. 07 Civ. 1801, 2009 WL 1835939, at *4 (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)).

17 *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir. 1995).

18 129 S.Ct. 1937 (2009).

19 *Id.* at 1948.

20 *Id.* at 1949.

21 *Id.*

8

Precisely what remains of the Second Circuit's personal involvement rule in light of *Iqbal* is not entirely clear. While the Circuit has not yet addressed the question, one of my colleagues has concluded that:

> "[o]nly the first and part of the third *Colon* categories pass *Iqbal's* muster -- a supervisor is only held liable if that supervisor participates directly in the alleged constitutional violation or if that supervisor creates a policy or custom under which unconstitutional practices occurred. The other *Colon* categories impose the exact types of supervisory liability that *Iqbal* eliminated -- situations where the supervisor knew of and acquiesced to a constitutional violation committed by a subordinate."[22]

That view is persuasive.

There is no suggestion that any of these defendants directly participated in any of the alleged constitutional violations – false arrest, malicious prosecution, excessive use of force or anything else. Nor is there any admissible evidence that any of them "create[d] or allow[ed] the continuation of a policy or custom under which [the alleged] unconstitutional practices occurred."[23] It is doubtful that the evidence would permit a finding that any of them thought that violations occurred but looked the other way, and even that would not be sufficient. Accordingly, they are entitled to dismissal. It therefore is unnecessary to consider the question of qualified immunity.

III.    Monell *and the Claim Against the MTA*

Plaintiffs seek to hold the MTA liable for the actions of the officers who allegedly arrested and beat them in violation of, among other things, their constitutional rights. Under Section 1983, however, there is no vicarious or *respondeat superior* liability. In order to hold the MTA liable

---

[22] *Bellamy*, 2009 WL 1835939, at *6.

[23] *See Colon*, 58 F.3d 865 at 873.

9

for any violations by its employees, a plaintiff must show that "through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged."[24]

       This causation element of a Section 1983 claim against a municipality can be divided into two parts.[25] "First, the plaintiff must predicate his recovery on some particular action taken by the city, as opposed to an action taken unilaterally by a nonpolicymaking municipal employee."[26] Second, the plaintiff must prove that the policy or custom caused the deprivation of his constitutional right.[27] A plaintiff can make the former showing in several different ways depending on the facts of the case. Allegations are sufficient in this respect if they show (1) that the unconstitutional action implemented an official City policy,[28] (2) that an official or officials responsible for establishing City policy with respect to the subject matter in question took action or made a specific decision that caused the alleged violation of plaintiffs' constitutional rights,[29] (3) that the unlawful custom or practice by subordinate officials is so manifest or widespread as to imply the constructive acquiescence of policymaking officials,[30] or (4) that a municipality's failure to train or supervise

---

[24] *Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 404 (1997) (emphasis in original).

[25] *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 829-30 (1985).

[26] *Id.* at 829.

[27] *Id.* at 830.

[28] *Monell, v. Dep't of Social Servs.*, 436 U.S. at 658, 690 (1978).

[29] *Pembaur v. City of Cincinnati*, 475 U.S. 469, 482-83 (1986).

[30] *City of St. Louis v. Praprotnik,* 485 U.S. 112, 127 (1988) (plurality opinion); *Sorlucco v. New York City Police Dep't,* 971 F.2d 864, 871 (2d Cir. 1992).

Case 1:09-cv-05879-LAK   Document 50   Filed 11/11/10   Page 10 of 12

10

"amounts to deliberate indifference to the rights of persons with whom the police come into contact."[31]

In this case, plaintiffs do not claim that the alleged unconstitutional action implemented an official MTA policy or that any specific decision of the MTA with respect to the matter at hand caused the alleged violations. They rest entirely on claims of widespread misconduct by MTA officers and an alleged failure to train.

Plaintiffs rely on documents related to other civilian complaints and investigations in plaintiffs' Exhibit EE made with respect to three MTA defendants. Plaintiffs argue that MTA investigators tend to accept the accounts of MTA officers as true despite civilian statements to the contrary.[32] As previously noted, none of the complaints was found to have been substantiated. Nor are the complaints sworn statements or admissible for the truth of what the complainants said. Even ignoring such issues, a collection of complaints against three MTA officers does not support a conclusion of "manifest" or "widespread" misconduct sufficient to "imply the constructive acquiescence of policymaking officials." Moreover, the complaints and investigative reports do not support a conclusion that MTA supervisors ignored officer misconduct. Several of the reports were inconclusive, and there is at least one instance in which an officer was disciplined. Accordingly, these complaints do not a raise a genuine issue of material fact with respect to a widespread custom or practice by subordinate MTA officers.

To support their failure to train claim, plaintiffs again refer to plaintiffs' Exhibit EE,

---

[31]  *City of Canton v. Harris,* 489 U.S. 378, 388 (1989).

[32]  Pl. Mem. 29.

11

along with other allegations and pending civil rights cases against some of the MTA Defendants.[33] Both parties agree that establishing "deliberate indifference" requires satisfying the following three-part test: (1) the "policymaker knows 'to a moral certainty' that her employees will confront a given situation," (2) "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation," and (3) "the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights."[34] At the summary judgment stage, the plaintiff is required also to present admissible evidence "from which a reasonable factfinder could conclude that the training program was actually inadequate, and that the inadequacy was closely related to the violation."[35]

The Court agrees with the plaintiffs that MTA officers will encounter situations involving Fourth Amendment issues that could result in a deprivation of rights. But there is no admissible evidence showing difficulty in choosing a particular type of training or a substantiated history of misconduct. Even if plaintiffs had met the threshold test for deliberate indifference, there is no evidence regarding the MTA's training protocol and any causal relationship between the training and the alleged constitutional violations. Accordingly, there is no genuine issue of material fact with respect to the MTA's alleged failure to train.

---

[33] Pl. Counter-Statement of Facts [DI 43] ¶¶ 231-254.

[34] *Walker v. City of New York*, 974 F.2d 293, 297-98 (2d Cir. 1992).

[35] *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 130 fn.10 (2d Cir. 2004).

12

*Conclusion*

For the foregoing reasons, MTA defendants' motion for partial summary judgment is granted. All claims based on 42 U.S.C. § 1981 and all claims against defendants Ranaldo, King, Fitzpatrick, and the MTA are dismissed.

SO ORDERED.

Dated:  November 11, 2010

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)